Filed 5/5/15  In re J.W. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re J.W., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>J.W.,<br><br>        Defendant and Appellant. | A143108<br><br>(Contra Costa County<br>Super. Ct. No. J1100350) |

Appellant J.W., who is 16 years of age, appeals from a dispositional order continuing him as a ward of the court, removing him from the custody of his parents (Welf. & Inst. Code, § 726, subd. (a)(3)),[1] and committing him to a county juvenile facility for a period not to exceed the earlier of 10 years and two months or his 21st birthday.

His court appointed attorney has filed a brief raising no issues and asking this court to independently review the case pursuant to *People v. Wende* (1979) 25 Cal.3d 436.  Appellant was advised by counsel of his right to file a supplemental brief but he has not done so.

---

[1]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

## FACTS AND PROCEEDINGS BELOW

### I.

The facts relating to the carjacking offense, which are taken from the probation report, are as follows: About 12:45 a.m. on July 15, 2014, Gustavo Gonzalez was confronted by three minors, two of whom pointed black pistols at him and demanded his money, wallet, and keys. About two hours later the three minors and a fourth person went to Gonzalez's home and drove off with his parked car. When Gonzalez's wife yelled at the minors, one of them pointed a handgun at her and told her to get back inside or he would shoot her. Using another vehicle, Gonzalez followed the stolen car as it fled onto Interstate 80. Eventually, police officers who had been alerted to the crime pursued the stolen car for several miles until it collided (apparently with an abutment) and overturned near the El Portal off ramp. At that time five individuals were in the car. One was taken into custody following "canine contact," the other four, including appellant, were detained after crawling from a driver side window and were taken to the hospital. Gonzalez did not identify appellant as involved in the taking of his vehicle. At 8:45 a.m., after he had been treated for his injuries, appellant was admonished of his rights and elected not to speak with the police.

Appellant later admitted to his probation officer that he knew the car had earlier been stolen. As stated in the probation report, appellant shared that he was actually happy to be in juvenile hall because he acknowledged he could have died the night of his arrest. He divulged, "I'd rather be here, than dead." "[Appellant] regrets his involvement, which he admits was taking a ride in a stolen vehicle, especially because it created a bad example for his younger siblings and he hurt his mother and grandmother. [Appellant] was very descriptive regarding the high speed chase leading up to his arrest. As he spoke, he was visibly shaken and took long pauses in between sentences." When asked about the victims, appellant acknowledged they probably were scared and he would not have wanted that to happen to either of his parents.

2

**II.**

Since 2011, appellant has been the subject of several petitions pursuant to section 602 prior to the 2014 petition that led to the dispositional order challenged below.

The first, which was filed on March 9, 2011, alleged that he committed misdemeanor petty theft (Pen. Code, §§ 484/488), by stealing a bicycle from another boy. The allegation was sustained and the juvenile court ordered six months of non-wardship formal probation (§ 725) Appellant was ordered to pay victim restitution, have no contact with co-participants in the offense, and complete 45 hours of community service.

Five months later, on August 18, 2011, an amended supplemental 602 petition was filed alleging appellant told another minor: "I'm going to kill you." Later the same day he made the threat, the threatened minor (K.J.), while riding in a car with his mother, saw appellant along the road lift his shirt, display a gun in his waistband, and threaten to kill K.J. and his mother as they drove by. The supplemental petition alleged a criminal threat. (Pen. Code, § 422.) The petition was sustained, appellant was adjudged a ward of the court, released to his mother and subjected to juvenile electronic monitoring. As conditions of probation, appellant was ordered to participate in an anger management program and counseling, complete 45 hours of community service, and have no contact with a co-participant (J.B.) or K.J., the victim. He was also ordered not to associate with any known gang members.

On May 8, 2012, a second supplemental 602 petition was filed alleging two counts of assault (Pen. Code, § 245, subd. (a)(1)) on different victims during a fight in a park. An amended petition filed a few weeks later additionally alleged felony criminal threats (Pen. Code, § 422) and misdemeanor exhibition of a deadly weapon. (Pen. Code, § 417, subd. (a)(1).) The additional offenses related to allegations that in challenging another minor to a fight, appellant showed the minor a knife and threatened to stab him. On June 7, 2012, the allegation of felony criminal threats was sustained and the remaining allegations dismissed. After the dispositional hearing the court continued appellant as a ward of the court, released him again to the custody of his mother and imposed 90 days

3

of electronic monitoring. The conditions of probation also included further participation in anger management, counseling, and no contact with any victim.

On May 9, 2014, appellant was notified that he violated the conditions of his probation by failing to report to his probation officer on a specified date. Appellant's mother explained to the probation department that he missed the appointment due to a death in the family and, at the request of the probation department, the court dismissed the violation.

The current 602 petition, which was filed on July 16, 2014, alleged two felony violations: second degree robbery (Pen. Code, §§ 211/212.5) (count 1), and carjacking (Pen. Code, § 215, subd. (a)) (count 2). As to each count it was alleged that appellant committed the offense while armed with a firearm (Pen. Code, § 12022, subd. (A)(1). The petition also alleged appellant had prior sustained violations of misdemeanor petty theft, misdemeanor criminal threats, and felony criminal threats.

On July 16, 2014, a notice of probation violation was filed alleging three violations of probation: (1) the failure to keep an appointment with his probation officer; (2) failure to comply with the curfew imposed on him; and (3) failure to comply with an order prohibiting him from having contact with J.B., the minor who was a co-participant in the criminal threat made to J.K. and his mother.

At his arraignment on July 17, 2014, after he denied the allegations of the petition and the alleged probation violations, appellant was detained in the juvenile hall. Less than a month later, at the August 7th jurisdictional hearing, appellant pleaded no contest to carjacking and admitted the three priors alleged. The court then dismissed the second degree robbery allegation,[2] the arming enhancements,[3] and the alleged probation

---

[2] Defense counsel stated (and the deputy district attorney agreed) that appellant was not involved in the second degree robbery and that allegation was "overcharged."

[3] The deputy district attorney stated that she struck the arming enhancement because "carjacking is only a [section] 707[, subdivision] (b) offense when armed." In other words, by striking the enhancement, the court would be unable to commit appellant to the Department of Juvenile Justice; though he could be committed to juvenile hall or the Orin Allen Youth Rehabilitation Facility.

4

violations. At the time he entered his plea, appellant was advised by the court that the maximum sentence he was exposed to by his plea was 10 years and 2 months.

At the disposition hearing, the defense argued that placement of appellant in the Youth Offender Treatment Program (YOTP), a locked facility in the juvenile hall, as recommended by the probation department, was inappropriate. Acknowledging that appellant's conduct was "serious," and he had previously been on probation, defense counsel emphasized that appellant had not participated in the taking of the vehicle, he was less criminally sophisticated than the other minors involved, his prior offenses were relatively minor, his mother moved him to a school in San Francisco because "she was looking to move him out of the Richmond area because she was concerned about his safety" and the negative "peer pressure." Counsel agreed appellant needed "more help and structure" but argued that placing him in a locked facility for two years would be "counterproductive, especially given the amount of time that he seemed to be doing pretty well while on probation, given the amount of time the mom was really struggling to put him in a better environment."

At the close of the contested disposition hearing, the court continued appellant as a ward of the court, removed him from the custody of his parents (§ 726, subd. (a)(3)), and ordered the probation department to commit appellant to a county juvenile facility for a period not to exceed earlier of 10 years and two months or appellant's 21st birthday. Specifically, appellant was ordered to be placed in the YOTP, a locked facility that was part of the juvenile hall. Appellant was given credit (137 days in custody) for time served.

The dispositional order relied upon the detailed assessment and recommendation of the probation department. The lengthy report concluded that appellant "revealed vulnerability during the probation interview" suggesting he "may be receptive to treatment at this time," and "[in] fact, the highly structured and rigorous YOTP . . . appears to be a perfect fit for [appellant]. Not only is he qualified, but he currently warrants detention for the protection of the community, making the timing of a YOTP placement perfect." In the view of the probation department appellant "needs 24-hour

supervision in a structured and secure facility that is equipped to encourage pro-social growth, critical thinking, impulse control, and nondelinquent activities. Furthermore, the community deserves to be protected from this minor because his behavior and decisionmaking have created a continuum of victims and an array of destroyed personal property. [¶] The YOTP . . . is a highly structured, secure program designed to protect 'society by restructuring unacceptable anti-social behavior of youth and young adults by instilling the life skills necessary to transition into the community.' The program employs teachers, counselors, and probation officers in a secure setting to achieve these lofty goals. [¶] Moreover, [appellant] is behind in school credits and needs a comprehensive academic performance program that can meet his needs in reading, writing, comprehension, mathematics, and science. [Appellant] is negatively peer oriented, which appears to be gang related and impacting his priorities. [He] will benefit from critical thinking exercises . . . , gang counseling, and independent life skill[s] development."

Appellant, his codefendants, and all of their parents were found jointly and severally liable for restitution to the victims. Appellant was ordered to pay a restitution fine of $100. As conditions of probation, appellant was ordered to have no contact with his codefendants and their victims, and that he not knowingly associate with gang members, participate in gang activities, possess or display gang insignia or get gang-related tattoos.

Timely notice of appeal was filed on September 22, 2014.

## DISCUSSION

Because appellant pled no contest to the carjacking allegations of the petition that were sustained and admitted the three priors alleged, the scope of reviewable issues is restricted to matters based on constitutional, jurisdictional, or other grounds going to the legality of the proceedings leading to the plea; guilt or innocence are not included.

Accordingly, the issues upon which we must chiefly focus are whether appellant was competent to stand trial and enter his plea and, if so, whether the plea was entered knowingly and voluntarily and the sentence imposed was authorized by law.

6

Having examined the entire record, our conclusions are as follows:

Appellant did not enter his plea to the alleged carjacking or admit the three priors also alleged against him until he had been fully advised of and waived his rights to trial and silence, to subpoena witnesses, and to confront witnesses against him. He had also been timely advised that his plea and admissions could result in detention for up to the period imposed.

Appellant was at all times represented by competent counsel who guarded his rights and interests.

Appellant's admissions were made freely, voluntarily, and knowingly.

The disposition was based upon proper factors including the court's assessment of appellant's treatment needs and its assessment of which placement was best equipped to meet those needs.

Our independent review discloses no arguable legal issues requiring further briefing.

## CONCLUSION

The judgment, including the dispositional order, is affirmed.

_____
Kline, P.J.

We concur:

_____
Richman, J.

_____
Stewart, J.

7